UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CASSIAL URONE GARNER,

    *Petitioner*,                                CRIMINAL CASE NO. 13-CR-20120
                                                      CIVIL CASE NO. 14-12142

*v.*                                                   DISTRICT JUDGE THOMAS L. LUDINGTON
                                                   MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## AFTER EVIDENTIARY HEARING

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner Garner's motion to vacate sentence, (Doc. 20), be **DENIED** and that the government's motion to dismiss, (Doc. 28), be **GRANTED**.

**II.    REPORT**

    **A.    Background & Procedural History**

On February 13, 2013, Petitioner, Cassial Garner ("Garner"), was charged with "knowingly and intentionally possess[ing] with intent to distribute 28 grams or more of cocaine base . . . in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii)." (Information, Doc. 9 at 1.) On February 14, 2013, the United States filed notice that Garner's penalty was subject to enhancement under 21 U.S.C. § 851 because of his prior felony drug convictions. (Penalty Enhancement Information, Doc. 10.)

On February 21, 2013, Garner entered into a Rule 11 Plea Agreement with the United States for the offense of "Possession with Intent to Distribute Cocaine Base" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) with statutory penalties of ten years to life in prison, supervised release of eight years to life, and a fine of up to $10,000,000. (Doc. 14 at 1). Garner stipulated that he had been convicted of "delivering or manufacturing less than 50 grams of controlled substance" on February 16, 1995 and of "possessing less than 25 grams of a controlled substance . . ." on May 26, 2005, January 29, 2007, and January 5, 2010. (*Id.* at 2-3.)

There were no Sentencing Guideline disputes in the Plea Agreement; both parties agreed on a range of 151 to 188 months. (*Id.* at 4.) Garner's offense level was calculated as a thirty-one: his base offense level was thirty, *see* U.S.S.G. § 2D1.1(c)(5), with a two level increase for "[m]aintaining a premises for the purpose of distributing cocaine," *see* U.S.S.G. § 2D1(b)(12); a two level increase for "[p]ossession of a firearm," *see* U.S.S.G. § 2D1.1(b)(1); and a three level reduction for accepting responsibility, *see* U.S.S.G. § 3E1.1. (Doc. 14 at 11, 14.) Next, Garner was assigned seven criminal history points which put him in category four. (Doc. 14 at 12-13.) The Federal Sentencing Guidelines Sentencing Table prescribes a range of 151 to 188 months for an offense level of thirty one and a criminal history category of four. U.S.S.G. ch. 5, pt. A.

Three of the seven criminal history points were derived from U.S.S.G. § 4A.1.1(a), which attributes three points to a previous offense that resulted in a sentence of imprisonment that exceeded thirteen months where the qualifying sentence "resulted in the defendant's confinement during any part of the fifteen year period" preceding the "commencement of the instant offense." However, Garner was released from prison on November 28, 1997 from the qualifying prior offense, (Doc. 14 at 12), and the instant offense occurred on November 29, 2012, (Doc. 17 at 21);

2

this is a difference of fifteen years and one day and therefore U.S.S.G. § 4A.1.1(a) would not have applied. The presentence investigation report properly reflected four criminal history points instead of seven; this put Garner in a criminal history category of three instead of four and modified his range from 151 to 188 months to 135 to 168 months. (Doc. 27 at 4.)

The Plea Agreement also stated that "[n]either party may take a position concerning the applicable guidelines that is different from that reflected in the attached worksheets, except as necessary to the court's determination regarding defendant's criminal history, acceptance of responsibility, and obstruction of justice." (Doc. 14 at 5.) Garner could withdraw from the agreement and his guilty plea only if the Court's sentence was higher than the Plea Agreement's range. (Doc 14 at 7.)

Garner also agreed that as long as he was not sentenced to more than the agreed-upon range, he waived his right to appeal and to collaterally attack his conviction and sentence. (*Id.*) Specifically, the Plea Agreement stated that Garner "knowingly and voluntarily waive[d]" these rights and agreed "not to contest his conviction or sentence in any post-conviction proceeding, including . . . under 28 U.S.C. § 2255." (*Id.*)

Garner entered his plea before Magistrate Judge Charles Binder on February 21, 2013. (Tr. of Plea, Doc. 17 at 1.) Judge Binder told Garner that he was charged with "possession with intent to distribute crack cocaine," and that the charge carried a sentence of "at least ten years' imprisonment, with as much as life imprisonment." (*Id.* at 6.) Garner attested that he understood the charge and the possible sentence he faced. (*Id.* at 6-7.) He testified that his attorney had explained all of this to him and that he was satisfied with his attorney's advice and service. (*Id.* at 7.)

3

At the plea hearing, Garner testified that he understood pleading guilty would prevent him from appealing or collaterally attacking his sentence. (*Id.* at 17-18.) Garner then pleaded guilty and Judge Binder wrote a Report and Recommendation finding Garner was competent to tender a plea, that he entered his plea knowingly and intelligently, and that the offense was supported by an independent basis in fact for each essential element. (Doc. 15.) Neither party objected to the Report and Recommendation and United States District Judge Thomas L. Ludington adopted it, accepted the guilty plea, and took the Rule 11 Agreement under advisement. (Doc. 18.)

At Garner's sentencing hearing, on May 23, 2013, Judge Ludington explained that Garner had pleaded guilty to "the offense of possession with the intent to distribute cocaine base," and that the offense was "punishable by a minimum term of ten years in custody and up to [a] lifetime [in] custody." (Doc. 27 at 4.) Garner testified that he had the opportunity to review the pre-sentence report and that it appeared accurate and complete. (*Id.* at 5.) Judge Ludington explained that the pre-sentence report's Guidelines calculation modified the original Rule 11 Agreement "to the defendant's advantage . . . ." (*Id.* at 5-6) The report only reflected four criminal history points instead of seven; this put Garner in a criminal history category of three instead of four and modified his range from 151 to 188 months to 135 to 168 months. (*Id.*) Respondent testified that he had no challenges to the new scoring. (*Id.*)

Judge Ludington also reminded Garner, and Garner testified that he understood, that he had waived his right to appeal and collateral attack, and that he should consult with his attorney if he believed he still wanted to appeal. (*Id.*) Garner was sentenced to 135 months and committed to the custody of the United States Bureau of Prisons. (J., Doc. 19 at 2.) He did not appeal his conviction or sentence.

4

On May 27, 2014, Garner filed a motion to vacate his sentence under 28 U.S.C. § 2255. (Doc. 20.) His motion asserted five grounds for relief, one of which was found to be meritorious, i.e., that he received ineffective assistance of counsel when his attorney failed to consult with him regarding the advantages and disadvantages of filing a direct appeal. (Doc. 35.) Judge Ludington then referred the matter to the undersigned magistrate judge "to conduct an evidentiary hearing on Garner's fourth claim of relief - that he received ineffective assistance of counsel when counsel failed to consult with him regarding the advantages and disadvantages of appealing." (Doc. 35 at ID 237.) An evidentiary hearing was held on February 5, 2015.

### B.     Evidentiary Hearing

At the evidentiary hearing, Garner testified that during his sentencing, Judge Ludington told him that he could appeal within a certain period of time, i.e., 14 days. Garner explained that he thought he was "done" from the plea agreement which waived his right to appeal, so he asked his trial counsel, "Does that apply to me?" Although trial counsel responded that he would talk to Garner later, trial counsel did not speak with him. Garner stated that the last time he spoke with his trial counsel was in court the day of sentencing. Garner did not ask his lawyer to appeal.

Trial counsel confirmed that Garner's plea agreement waived any right to appeal, that Garner indicated that he understood he was giving up his right to appeal, that Garner did not express any concern over the loss of his appellate rights at any point from their initial review of the agreement to the later sentencing, and that Garner never asked him to file an appeal. Trial counsel also explained that the plea agreement afforded a substantial benefit to Garner in that it foreclosed the filing of any other charges against Garner, i.e., from being charged with felon in possession based on the gun found in Garner's home, and the plea agreement limited the amount of drugs for which

5

Garner would be responsible to those found in his car even though more were found in Garner's home. In addition, although the plea agreement indicated that the sentencing guideline range was 151-188 months, as noted earlier, this scoring was later changed and Garner received a sentence at the bottom of the relevant, lower guideline range, i.e., 135 months.

Trial counsel testified that Garner did not instruct him to appeal, did not convey a desire to appeal, and did not show any interest in appealing. When asked if there were any reason why Garner should want to appeal, counsel indicated "no" because there would be no way to get better results than those gained by the plea agreement. Trial counsel further stated that no rational defendant in Garner's situation would have wanted to appeal so there was no reason to consult with Garner about an appeal. Trial counsel did not consult with Garner regarding an appeal.

Trial counsel did not remember whether Garner had asked him whether the 14-day time for appeal (as set forth by Judge Ludington after sentencing) applied to him or not. Trial counsel stated that if Garner had asked him about appealing, counsel would have advised Garner not to appeal because an appeal could expose Garner to higher penalties should the plea agreement be undone, i.e., Garner could be found responsible for higher drug amounts, Garner could be charged with felon in possession in addition to the controlled substance charge, and any sentence on a firearm conviction would run consecutively with any controlled substance sentence.

    **C.**    **Governing Law and Analysis**

It is well settled that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984). Plea agreements are contractual in nature so courts are guided by general principles of contract interpretation when considering them. *United States v. Moncivais*,

492 F.3d 652, 662 (6th Cir. 2007). A plea agreement is a bargained-for exchange that does not implicate the constitution when it is entered into knowingly and voluntarily. *Mabry*, 467 U.S. at 508 ("It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired."). "[I]n cases where a defendant argues that his [or her] plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his [or her] . . . right to collateral attack . . . ." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). On the other hand, "[e]nforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted).

Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the waiver will be enforced. *Id.* The Supreme Court enunciated the standard for voluntary and intelligent pleas in *Brady v. United States*:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him [or her] by the court, prosecutor, or his [or her] own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. 742, 755 (1970).

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, which requires the movant to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the

7

deficiency prejudiced the movant to such an extent that the result of the proceeding is unreliable. 466 U.S. 668, 688 (1984). In *Roe v. Flores-Ortega*, the Supreme Court extended *Strickland* to failure-to-file-appeal and to failure-to-consult cases: "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he [or she] otherwise would have taken, the defendant has made out a successful ineffective assistance claim entitling him [or her] to an appeal" without any further showing. 528 U.S. 470, 484 (2000). The Sixth Circuit has found that counsel must file an appeal when their client explicitly requests it, "even where an appeal appears frivolous." *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012) (requiring an *Anders* brief–"a brief indicating there are no meritorious grounds for appeal as described in *Anders v. California*, 386 U.S. 738, 744 (1967)"– in such cases).[1]

However, when the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant." *Flores-Ortega*, 528 U.S. at 477. Consult means "advising about the advantages and

---

[1] *Cf. United States v. Mabry*, 536 F.3d 231, 242 (3d Cir. 2008) (finding that if the waiver of direct appeal and collateral attack rights was made knowingly and voluntarily, an ineffective assistance of counsel claim based on failure to file an appeal would be precluded and the plea agreement would be enforced absent a narrowly-defined exception to prevent a miscarriage of justice); *Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008) ("[I]t would be anomalous to plead guilty and waive appeal, yet reserve by indirection a right to test the conviction later."); *United States v. Attar*, 38 F.3d 727, 732-33 (4th Cir. 1994); *United States v. Blick*, 408 F.3d 162, 173 (4th Cir. 2005) (noting that where a defendant is "sentenced precisely in the manner that he anticipated[,]" the appellate waiver must be enforced because plea agreements "rest on contractual principles, and each party should receive the benefit of its bargain"; an appeal under these circumstances would "unfairly deny the United States an important benefit of its bargain"); *United States v. Arevalo*, Nos. 5:07-153-JMH-JGW (crim); 09-7071-JMH-JGW (civ), 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010) ("Requiring counsel to file a notice of appeal or an *Anders* brief in the face of such a waiver would be nonsensical . . . [and] would also create an infallible rule out of the holding in *Flores-Ortega* that both defies logic and depends on a scenario which was not before the Court in that case."); *United States v. Coleman*, Nos. 07-185-JBC-JGW-2 (crim); No. 09-7091 (civ), 2010 WL 5173205, at *2 (E.D. Ky. June 7, 2010) (finding that collateral relief should be barred where the plea agreement was entered into knowingly and voluntarily because, "[h]aving received the benefit of his agreement, and having entered into his agreement knowingly and voluntarily, the defendant should not now be permitted to violate that same agreement").

8

disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel did consult with defendant then counsel only "performs in a professionally unreasonable manner . . . by failing to follow the defendant's express instructions with respect to the appeal." *Id.*

The Court next addressed situations where counsel had failed to consult. *Id.* at 478. The Court first declined to establish a per se rule that counsel's failure to consult always constitutes deficient performance; instead, a "court must ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court articulated two scenarios when the Constitution requires counsel to "consult" with defendant: "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he [or she] was interested in appealing." *Id.* at 479; *see also Granger v. Hurt*, 215 F. App'x 485, 492 (6th Cir. 2007). Although not determinative, a "highly relevant factor . . . [is] whether the conviction follows a trial or a guilty plea . . . ." *Flores-Ortega*, 528 U.S. at 480. In addition, courts should consider whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appeal rights. *Id.*

In his Petition, Garner argued that "[b]ecause he expressed a[] desire to appeal his ex-lawyer had a duty after . . . sentencing to consult with" him and explain the "advantages and disadvantages to appealing." (Doc. 20 at 28.) He asserts that if his counsel had consulted with him he would have appealed. (*Id.*) At the evidentiary hearing, however, Garner clarified that although he did not directly ask trial counsel to appeal, he asked whether the 14-day window in which to file an appeal

9

applied to him. He explained that his question was borne of his confusion regarding whether he could appeal or not because he knew that he had waived his right to appeal in the plea agreement.

I suggest that counsel's failure to consult was not deficient with respect to the first scenario laid out in *Flores-Ortega*. This is not a case where "a rational defendant would want to appeal." *See Flores-Ortega*, 528 U.S. at 480. Garner has waived this right and there do not appear to be any non-frivolous grounds for appeal.

As to the second scenario, it is a closer call whether "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *See id.* For purposes of this analysis, I will assume that Garner's testimony is true, especially where trial counsel did not remember whether Garner's account was true or not.

Garner's question (whether the 14-day time in which to file an appeal applied to him) and trial counsel's response (that he would discuss it with Garner at a later date), taken together, could be viewed as having two possible meanings. On the one hand, the exchange could be viewed as indicating that Garner wondered whether he could appeal, which, in turn, could imply that if he could appeal, he would want to talk about the possibility of filing an appeal. In this two-step implied scenario, trial counsel's response could be viewed as indicating that counsel was willing, at a later date, to discuss the possibility, advantages and disadvantages, of filing an appeal.

On the other hand, Garner's question and trial counsel's response, could merely indicate Garner's confusion over why the judge would tell Garner about the time in which to file an appeal when he had waived his right to appeal. Under this scenario, counsel's response would indicate that, at a later date, counsel would explain why the judge was telling him about the timing in which to file an appeal despite the appellate waiver. I suggest that the latter scenario is more likely in light

10

of Garner's affidavit, as cited by Judge Ludington, wherein Garner said he "was confused and had no idea that, I could still file an appeal in light of me waiving my appellate rights . . . ." (Doc. 35 at 17.)

This conclusion is buttressed by application of the relevant factors. In deciding whether "this particular defendant reasonably demonstrated to counsel that he was interested in appealing[,]" the court looks to the factors set forth by the Supreme Court, i.e., whether the conviction follows a trial or a guilty plea, whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appeal rights. *Flores-Ortega*, 528 U.S. at 480. In this case, the conviction was via a guilty plea pursuant to an agreement wherein Garner expressly waived the right to appeal. In addition, Garner received the benefit of the bargain as to his sentence, which was at the lowest end of the lower amended guideline range, and Garner benefitted from the agreement's promise that he would not be charged with any controlled substances found in his home, nor would he be charged with being a felon in possession of the firearm found in his home. All these factors weigh in favor of a finding that Garner did not reasonably demonstrate that he was interested in appealing.

I therefore suggest that Garner did not reasonably demonstrate an interest in appealing. *See, Galvin-Garcia v. United States*, No. 2:10-CR-261, 2014 WL 546042, at *3, 7-8 (S.D. Ohio Feb. 10, 2014) (holding that where defendant and his counsel discussed appealing only if defendant did not get credit for time served in state custody and defendant did get credit for that time, defendant did not reasonably demonstrate an interest in appealing despite his comment, after hearing of his appellate rights after sentencing, that he would "think it over."); *Lee v. United States*, No. 2:10-cr-160(1), 2013 WL 5521874, at *7 (S.D. Ohio Oct. 3, 2013) (noting that the court had "significant

11

doubt" that the defendant's question about whether there was anything else that could be done could be interpreted as showing sufficient interest in appealing; but finding no need to answer that question because of a lack of even alleged prejudice); *United States v. Washington*, No. 2:11-CR-20248, 2013 WL 8178395, at *11 (E.D. Mich. Sept. 5, 2013) (finding that counsel was not ineffective for failing to consult defendant regarding an appeal where the Rule 11 plea agreement contained an express appellate waiver, the agreement was explained to defendant at the plea colloquy, and the sentence did not exceed the agreed-upon sentence).

I therefore suggest that Garner has not met his burden to show that trial counsel was ineffective for failing to consult with him regarding the advantages and disadvantages of filing an appeal.[2]

### III. Conclusion

For these reasons, I recommend that Petitioner Garner's motion to vacate sentence, (Doc. 20), be denied and that the government's motion to dismiss, (Doc. 28), be granted.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another

---

[2] I note that Garner has alleged that he would have appealed if he had been consulted, so he could, perhaps meet the requirement to show prejudice, despite the frivolousness of appeal. The Supreme Court has held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 11, 2015          /S PATRICIA T. MORRIS
                                  Patricia T. Morris
                                  United States Magistrate Judge